# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM SHUMAKER, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>v.<br><br>BLUE BUFFALO PET PRODUCTS, INC., WILLIAM BISHOP, BILLY BISHOP, PHILIPPE AMOUYAL, EVREN BILIMER, RAYMOND DEBBANE, MICHAEL A. ECK, FRANCES FREI, AFLALO GUIMARAES, AMY SCHULMAN, GENERAL MILLS, INC., and BRAVO MERGER CORP.,<br><br>                 Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff William Shumaker ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.  Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Blue Buffalo Pet Products, Inc. ("Blue Buffalo" or the "Company"), against Blue Buffalo, and the Company's Board of Directors (the "Board" or the "Individual Defendants")(collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to General Mills, Inc. ("Parent") and Bravo Merger Corp. (the "Merger Sub" and collectively with Parent, "General Mills") as a result of an unfair process for an unfair price, and to enjoin the consummation of a proposed all-cash transaction valued at approximately $8.0 Billion (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in a February 23, 2018 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Blue Buffalo will become an indirect wholly-owned subsidiary of General Mills, and Blue Buffalo stockholders will receive $40.00 per share in cash for each share of Blue Buffalo common stock they own.

3.     Thereafter, on March 19, 2018, Blue Buffalo filed a Preliminary Information Statement on Schedule Prem14C (the "Preliminary Information Statement") with the United States Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.     Blue Buffalo is, by its own admission, a controlled company, with approximately 55% of its outstanding stock owned by either equity funds associated with Invus, L.P. ("Invus"), a longtime financial investor in the Company, or by members of the Bishop family, the founders of the Company (together, the "Majority Stockholders").  This clear conflict of interest between the Majority Stockholders who control the Company and Plaintiff and other minority holders has most definitely played a role in the failure to ensure an adequate process and has trampled on the rights of Plaintiff and other Company stockholders.

5.     The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Majority Stockholders have pledged all such shares in a support agreement to vote in favor of the Proposed Transaction; no vote of any minority shareholders is required to consummate the Proposed Transaction.  Furthermore, as is made clear in the Preliminary Information Statement, the Company does not intend for any such vote to take place.  Rather, the Proposed Transaction can be consummated at any moment.

6.     Most telling of the above fact is that, despite engaging in a several month sales process, the Board did not engage in any effort whatsoever to perform any type of market check for potentially interested third parties, at any point in the process.  Moreover, the Board did not even require a go-shop period, accepting, instead, a weak "window shop" period of thirty days.

7.     Instead, the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no

thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8. In fact, Defendant Billy Bishop, CEO of Blue Buffalo, negotiated not only retention of employment with the surviving entity, but a substantial pay raise as well, all while negotiations to achieve the best possible deal for the stockholders of the Company should have been happening.

9. Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Blue Buffalo and is the result of a flawed sales process.

10. As part of such a process, the Board and Company agreed to an onerous and preclusive no solicitation clause, that, after a short 30-day "window shop period", the Company cannot terminate the Proposed Transaction should a third party offer a deal that the Board considers to be a superior offer.  This is particularly prejudicial given the lack of any actual market check prior to the Merger Agreement being signed.

11. In violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Information Statement on March 19, 2018 with the SEC.  The Preliminary Information Statement is materially deficient and deprives Blue Buffalo stockholders of the information they need to make an intelligent, informed and rational decision of whether to seek appraisal of their shares in lieu of the consideration offered under the terms of the Proposed Transaction.

12. As detailed below, the Preliminary Information Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Blue Buffalo, provided by Blue Buffalo's management to the Company's financial advisors J.P. Morgan Securities LLC ("J.P.

Morgan") and Centerview Partners LLC ("Centerview") for use in its financial analyses; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisors, J.P. Morgan and Centerview.

13.     Given that the Preliminary Information Statement failed to disclose information material to an informed shareholder's decision whether or not to seek appraisal, Plaintiff, on behalf of the minority Blue Buffalo stockholders, seeks an injunction to prevent consummation of the Proposed Transaction to afford Plaintiff a reasonable opportunity to obtain a "quasi-appraisal" so that Plaintiff can make an ultimate determination whether to request an appraisal.

14.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

15.     Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Blue Buffalo stockholder.

16.     Defendant Blue Buffalo through its subsidiary, Blue Buffalo Company, Ltd., operates as a pet food company in the United States, Canada, Japan, and Mexico.  Blue Buffalo is organized under the laws of Delaware and has its principal place of business at 11 River Road, Suite 103, Wilton, CT 06897.  Shares of Blue Buffalo common stock are traded on the NasdaqGS under the symbol "BUFF."

17.     Defendant William Bishop has been a director of the Company at all relevant times. In addition, Defendant William Bishop is a co-founder of the Company and serves as the Chairman of the Board.

18.     Defendant Billy Bishop has been a director of the Company at all relevant times. In addition, Billy Bishop is a co-founder of the Company and serves as the Company's Chief Executive Officer ("CEO").

19.     Defendant Philippe Amouyal ("Amouyal") has been a director of the Company at all relevant times.  In addition, Amouyal serves as a member of the Board's Compensation Committee.

20.     Defendant Evren Bilimer ("Bilimer") has been a director of the Company at all relevant times.  In addition, Bilimer serves as the Chair of the Board's Compensation Committee.

21.     Defendant Raymond Debbane ("Debbane") has been a director of the Company at all relevant times.  Notably, Debbane is the President and CEO of Invus.

22.     Defendant Michael A. Eck ("Eck") has been a director of the Company at all relevant times.  In addition, Defendant Eck serves as the Chair of the Board's Audit Committee and is designated as a being a 'Financial Expert' by the Company.

23.     Defendant Frances Frei ("Frei") has been a director of the Company at all relevant times.  In addition, Frei serves on the Board's Audit and Compensation Committees.

24.     Defendant Alfalo Guimaraes ("Guimaraes") has been a director of the Company at all relevant times.  Notably, Guimaraes is a Managing Director of Invus.

25.     Defendant Amy Schulman ("Schulman") has been a director of the Company at all relevant times.  In addition, Schulman serves as on the Board's Audit Committee.

26.     Defendants William Bishop, Billy Bishop, Amouyal, Bilimer, Debbane, Eck, Frei, Guimaraes and Schulman identified in ¶¶ 17 – 25 are collectively referred to as the "Individual Defendants."

27.     Parent manufactures and markets branded consumer foods in the United States.  Parent company operates in four segments: North America Retail; Convenience Stores & Foodservice; Europe & Australia; and Asia & Latin America.  Parent is a corporation organized under the laws of Delaware and has its principal place of business at Number One General Mills Blvd, Minneapolis, MN 55426.  Parent common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "GIS."

28.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent, and can be served care of Parent.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

30.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

31.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Blue Buffalo has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Blue Buffalo common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

33.     This action is properly maintainable as a class action because:

a.   The Class is so numerous that joinder of all members is impracticable.  As of February 26, 2018, there were more than 195 million common shares of Blue Buffalo stock outstanding.  The actual number of public stockholders of Blue Buffalo will be ascertained through discovery;

b.   There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.   Whether Defendants have violated the federal securities laws;

ii.    Whether Defendants made material misrepresentations and/or omitted material facts in the Preliminary Information Statement; and

iii.   Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated;

iv.    whether Defendants failed to furnish factual information material to an informed shareholder decision as to fair value of Blue Buffalo and whether or not to seek appraisal.

c.   Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.   Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.   Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.   Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

34.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Blue Buffalo and owe the Company the duties of due care, loyalty, and good faith.

35.     By virtue of their positions as directors and/or officers of Blue Buffalo, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Blue Buffalo to engage in the practices complained of herein.

36.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

     a.  act with the requisite diligence and due care that is reasonable under the circumstances;

     b.  act in the best interest of the company;

     c.  use reasonable means to obtain material information relating to a given action or decision;

     d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

     e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

     f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

37.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Blue Buffalo, are obligated to refrain from:

     a.  participating in any transaction where the directors' or officers' loyalties are divided;

    b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

    c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

38.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Blue Buffalo, Plaintiff and the other public stockholders of Blue Buffalo, including their duties of loyalty, good faith, and due care.

39.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Blue Buffalo common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

40.    Blue Buffalo, through its subsidiary, Blue Buffalo Company, Ltd., operates as a pet food company in the United States, Canada, Japan, and Mexico.  The Company develops, produces, markets, and sells dog and cat food under the BLUE Life Protection Formula, BLUE Wilderness, BLUE Basics, BLUE Freedom, and BLUE Natural Veterinary Diet lines.

41.    The Company sells its products to retail partners and distributors in specialty channels, including national pet superstore chains, regional pet store chains, neighborhood pet stores, farm and feed stores, e-commerce retailers, military outlets, hardware stores, and veterinary clinics and hospitals.

42.    The Company's most recent financial performance press release indicates sustained and solid financial performance.  For example, in a February 23, 2018 press release announcing its Full Year and Q4 financial results, the Company noted such full year financial highlights as an increase of net sales of 10.9% year-on-year, ***an increase in net income of 48.6% year-on-year***, and an increase in adjusted EBITDA of 15.8% year-on-year.   Q4 results were likewise,

extraordinarily positive, and showcased net sales increase of 14.2% year-on-year, **net income of 54.1% year-on-year**, and Adjusted EBITDA of 22.4% year-on-year.

43.     Speaking on these positive results, Defendant CEO Billy Bishop stated, "I'm pleased to say that 2017 was a strong year."  Bishop continued, "Blue Buffalo's momentum continues to be strong as we gained share, broadened our distribution footprint and built two new plants to fuel our growth.  Looking ahead, we're very optimistic about the future."

44.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Blue Buffalo.  For example, in a November 7, 2017 press release announcing the Company's 2017 Q3 financial results, Blue Buffalo reported such positive results as an increase in net sales of 18.4% year-on-year, **an increase in net income of 147.4% year-on-year,** and an increase in adjusted EBITDA of 20.0% year-on-year.

45.     Speaking on these results, Defendant Billy Bishop stated, "We are excited about the progress of our launch of BLUE Life Protection Formula into the mass and grocery channel and look forward to growing our business as we expand distribution over the next few years." Bishop continued, "In addition, we are continuing to invest behind our exclusive specialty lines to maintain our leadership position in the specialty channel."

46.     Clearly, based upon these extremely positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

47.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Blue Buffalo to enter into the Proposed Transaction for insufficient consideration, thereby depriving Plaintiff and other public shareholders of the Company the opportunity to reap the benefits of Blue Buffalo present and future success and to make a determination whether to seek appraisal.

***The Flawed Sales Process***

48.     As detailed in the Preliminary Information Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to General Mills.

49.     First and foremost, the Preliminary Information Statement reveals the major flaw with the sales process – that there was no 'process' at all.  Rather, from the moment the possibility of a merger between General Mills and Blue Buffalo was raised, by General Mills, the Company and the Board worked only to further that goal.  The most telling indicator that supports this pattern is that the Board did not conduct any sort of market check whatsoever for any potentially interested third party, at any point in the sales process, despite the sales 'process' with General Mills occurring over a five-month period.

50.     This lack of a market check is especially alarming when considering that the Preliminary Information Statement indicates that, at least, Defendant Billy Bishop thought that the Company could be valued at more than $40.00 per share.  Specifically, when faced with the $40.00 per share offer from General Mills, Defendant Bishop attempted to increase the price - he "emphasized the strong financial performance for the Company, including its plans for stronger earnings guidance."  Despite this fact, the Company chose not even to test the waters at any point in the sales process to determine if another bidder would be forthcoming, or if a bidding war could emerge.

51.     This lack of a market check is even more inexplicable when considering the Company's extraordinary financial performance in the past financial year.

52.     The Preliminary Information Statement is silent as to whether any special committee of Independent Board members was created to oversee the sales process leading up to the Proposed Transaction.  This silence is tantamount to acquiescence that no such committee was created or utilized in the lead up to the merger agreement, and presents significant issues as to the inherent fairness of the Proposed Transaction and the manner in which it was negotiated.

53.     Even absent the creation and utilization of a committee of independent Board members to run the sales process, the Company should have allowed the majority of the operational control of the sales process to fall to the hand of one or more independent Board members.  Again, this was not the case, as all operational aspects of the sales process seemed to be run either by

Defendant and CEO Billy Bishop or by persons associated with Invus, including Defendant Evren Bilimer.

54.     Considering Defendants Billy Bishop and William Bishop, together with third co-founder and family member Christopher T. Bishop own, individually or through other entities, approximately 15% of the outstanding stock of Blue Buffalo, and that Invus owns approximately 45% of the outstanding stock of Blue Buffalo, this complete control over the sales process by the Bishop Family and Invus is highly problematic, and indicates that their own interests were the overriding concerns for these parties, not the public stockholders of the Company.

55.     This flawed management of the sales process also led to the entry into the Proposed Transaction which contained an incredibly onerous 'no-solicitation' provision that does not allow Blue Buffalo to consider unsolicited third party offers that the Board believes to be superior offers, after a brief "window-shop" time period.

56.     The Preliminary Information Statement also reveals that during the sales process the Board, including Billy Bishop, negotiated for the continuation of the employment for the management team, and even a substantial raise for Billy Bishop himself.  Such a substantial conflict of interest of inside parties in mind over that of the public stockholders cannot be ignored.

57.     Moreover, the Preliminary Information Statement is also unclear as to the nature of non-disclosure agreement entered into between General Mills and Blue Buffalo during the sales process.  Specifically, the Preliminary Information Statement is unclear as to what the specific conditions are that would cause the included standstill provisions preventing the Company from communicating with interested third parties to fall away.

***The Proposed Transaction***

58.     On January 31, 2018, Blue Buffalo and General Mills issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **MINNEAPOLIS, Minn. and WILTON, Conn., Feb. 23, 2018** – General Mills, Inc. (NYSE: GIS) and Blue Buffalo Pet Products, Inc. (NASDAQ: BUFF) today announced that they have entered into a definitive agreement under which General Mills will acquire Blue Buffalo for $40.00 per share in cash, representing an enterprise value of approximately $8.0 billion. The transaction establishes General Mills as the leader in the U.S. Wholesome Natural pet food category, the fastest

growing portion of the overall pet food market, and accelerates its portfolio reshaping strategy.

Founded in 2002, Blue Buffalo is the fastest growing major pet food company making natural foods and treats for dogs and cats under the BLUE brand, which includes BLUE Life Protection Formula, BLUE Wilderness, BLUE Basics, BLUE Freedom and BLUE Natural Veterinary Diet. BLUE is the #1 Wholesome Natural pet food brand in the U.S. with $1.275 billion in net sales and $319 million in Adjusted EBITDA for fiscal year 2017, representing an Adjusted EBITDA margin of 25%. Over the past three years, Blue Buffalo has delivered compound annual net sales growth of 12% and Adjusted EBITDA growth of 18%.

"The addition of BLUE to our family of well-loved brands provides General Mills with the leading position in the large and growing Wholesome Natural pet food category and represents a significant milestone as we reshape our portfolio to drive additional growth and value creation for our shareholders," said General Mills Chairman and Chief Executive Officer, Jeff Harmening.

"We are competing more effectively in our existing categories by really listening to consumers and providing a variety of options that meet their needs," Harmening continued. "In pet food, as in human food, consumers are seeking more natural and premium products and we have tremendous respect for how attentive Blue Buffalo has been to the needs of their consumers, pet parents and pets, as they have built their brand. As we have done with Annie's, Lärabar and EPIC, we expect to help Blue Buffalo by leveraging our extensive supply chain, R&D and sales & marketing resources. We will in turn benefit from their experience building one of the strongest pull brands in the CPG world."

"I have been impressed by General Mills' strong track record of accelerating growth for its natural and organic brands, while giving them the freedom to maintain their own unique culture and identity. General Mills will be a tremendous home for our BLUE brand as our talented team of over 1,700 'Buffs' joins this new extended family," said Billy Bishop, Blue Buffalo Chief Executive Officer. "From the first meeting Jeff and I had, I felt a strong cultural fit between our two companies and believe they will be a great partner in our mission to reach more pet parents and feed more pets. This transaction creates significant, immediate value for our shareholders, as it recognizes the strength of our competitively advantaged business model. Along with our leadership team, we look forward to working with General Mills to continue growing the BLUE brand for many years to come."

**Compelling Strategic and Financial Benefits**

- **Addition of Attractive Growth Category.** The $30 billion U.S. pet food market is generating consistent 3-4% growth and is highly attractive for retailers based on continued market growth, premiumization and subscription-like purchase patterns that drive traffic and repeat purchases. Blue Buffalo is the leader in the fastest-growing Wholesome Natural category with double-digit growth over each of the last three years. The Wholesome Natural market represents approximately 10% of the pet food

market in volume and approximately 20% in value.[1] Based on the strong consumer tailwinds, the Wholesome Natural market is poised to continue to grow, propelling BLUE's

- **Leading Brand with Loyal Consumer Base in Early Innings of its Growth.** BLUE has one of the strongest brand equities in the pet food market and is the #1 brand in the Wholesome Natural category with retail sales of four-times the next largest Wholesome Natural pet food brand. Blue Buffalo has built a loyal consumer base, particularly amongst millennials, and is well positioned to capitalize on the pet humanization and the pet food premiumization trends, which are poised to continue for the foreseeable future. With all its success, BLUE still feeds only 3% of pets in the U.S. and has significant opportunities to convert more pets to BLUE.

- **Success in Existing and Emerging Channels.** BLUE is the #1 pet food brand in the pet specialty channel at approximately twice the size of the next largest brand. BLUE is also the #1 pet food brand in the rapidly growing E-Commerce channel, where Blue Buffalo generated over $250 million of net revenues in 2017 growing over 75% versus prior year. BLUE has generated early success in the food, drug and mass (FDM) channel which, in conjunction with General Mills' capabilities, represents a significant growth opportunity through strengthening BLUE's distribution.

- **Platform with Strong Growth and Operational Efficiency Poised to Benefit from the Transaction.** General Mills' scale and decades of experience will support greater effectiveness and efficiency for Blue Buffalo across key business areas, including: sales, marketing, advertising, supply chain, R&D, innovation, and environmental stewardship. These capabilities are expected to contribute to meaningful revenue synergies over time, in addition to $50 million in anticipated cost savings opportunities.

- **Meaningful Improvement to General Mills' Growth and Margin Profile.** The transaction will be immediately accretive to General Mills net sales growth and operating margin profile, and is expected to be neutral to cash EPS in fiscal 2019 and accretive in fiscal 2020.

General Mills is the third-largest natural and organic food producer in the U.S. with leading brands including Annie's, Lärabar, Liberté, Cascadian Farm, Muir Glen, and EPIC. Upon completion of the transaction, General Mills will operate Blue Buffalo as a new Pet operating segment alongside its four current operating segments: North American Retail, Convenience Stores & Foodservice, Europe & Australia, and Asia & Latin America. General Mills expects to maintain Blue Buffalo's Wilton, Connecticut headquarters and its Joplin, Missouri and Richmond, Indiana manufacturing and R&D facilities. Blue Buffalo's CEO, Billy Bishop, will continue to lead the business and report to Jeff Harmening.

**Transaction Details**

The all-cash purchase price of $40.00 per share represents a 23% premium to Blue Buffalo's 60-day volume weighted average price (VWAP), and a 2017 Adjusted EBITDA multiple of approximately 22x, including synergies.[3] General Mills expects to finance the transaction with a combination of debt, cash on hand and approximately $1.0 billion in equity.

Following the transaction, General Mills' pro forma net debt-to-EBITDA ratio is expected to be approximately 4.2x. General Mills is committed to maintaining an investment grade rating and expects to deleverage to approximately 3.5x by the end of fiscal 2020. General Mills expects to maintain its $0.49/share quarterly dividend and suspend its current share repurchase program while it prioritizes achieving its leverage target.

The transaction, which has been approved by the Boards of Directors of General Mills and Blue Buffalo, is subject to regulatory approvals and other customary closing conditions, and is expected to close by the end of General Mills' fiscal 2018. Invus, LP (Invus) and founding Bishop family shareholders, representing more than 50% of Blue Buffalo's outstanding shares, have approved the transaction and no other approval of Blue Buffalo's Board of Directors or shareholders is required to complete the transaction.

**Advisors**
Goldman Sachs & Co. LLC acted as financial advisor to General Mills and Cleary Gottlieb Steen & Hamilton LLP acted as legal counsel. J.P. Morgan Securities LLC and Centerview Partners LLC acted as financial advisors to Blue Buffalo and Simpson Thacher & Bartlett LLP acted as legal counsel to Blue Buffalo.

***The Inadequate Merger Consideration***

59.     Significantly, the Company's extraordinary financial results in the past year, its future financial prospects and opportunities for future growth, and synergies with General Mills establish the inadequacy of the merger consideration.

60.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering its astronomical increases in several key financial metrics in the past year.

61.     For example, financial analysts at Susquehanna Bancshares valued the Company as high as $41.00 per share two months before the announcement of the Proposed Transaction, a value indicating the stockholders of the Company received no premium on their shares.

62.     Additionally, Blue Buffalo's future success is extremely likely, given the consistent increases in net sales and net income figures.  Obviously, the opportunity to invest in such a company on the rise is a great coup for General Mills; however, it undercuts the investment of Plaintiff and all other public stockholders.

63.     In fact, many in the financial world are high on Blue Buffalo's ability to continue to achieve financial success as a standalone Company.  For example, Miguel Kauffman at *Simply Wall St.*, noted in an article titled 'Is Blue Buffalo Pet Products Inc Undervalued?' that, "With profit expected to grow by 74.57% over the next couple of years, the future seems bright for Blue Buffalo Pet Products.  It looks like higher cash flows is on the cards for the stock, which should feed into a higher share valuation."  Clearly such amazing praise by those in the financial media underscore at just how cheap a price General Mills is paying in the Proposed Transaction, and the large amount of money left on the table by the Board.

64.     Finally, the Proposed Transaction represents a significant synergistic benefit to General Mills.  Specifically, the Merger Agreement takes care to point out that "The transaction will be immediately accretive to General Mills net sales growth and operating margin profile, and is expected to be neutral to cash EPS in fiscal 2019 and accretive in fiscal 2020."

65.     Additionally, CEO of General Mills Jeff Harmening noted in the merger announcement that the Proposed Transaction "represents a significant milestone as we reshape our portfolio to drive additional growth and value creation for our shareholders".

66.     Clearly, while the deal will be beneficial to General Mills, it comes at great expense to Plaintiff and other public stockholders of the Company.

67.     Moreover, post-closure, Blue Buffalo stockholders will be cashed out, and will fail to reap any benefits of their investment as the Company continues on its path of future success.

68.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for General Mills at the expense of Blue Buffalo stockholders,

which clearly indicates that Blue Buffalo stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

69.     The Merger Agreement contains certain provisions that unduly benefit General Mills by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that requires, under certain circumstances, for Blue Buffalo pay up to $234 million to General Mills if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Blue Buffalo must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

70.     The Merger Agreement also contains a "No Solicitation" provision that restricts Blue Buffalo from considering alternative acquisition proposals by, *inter alia*, constraining Blue Buffalo's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal.  Notably, this provision is especially onerous in that it permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement *only within thirty days*.

71.     Specifically, this "window shop" period ended on March 24, 2018, which means, as of the date of this filing, the Company is constrained from terminating this agreement in favor of ***any unsolicited offer, even if the Board deems it to be a superior proposal for Company stockholders***.

72.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide General Mills information in order to match any other offer, thus providing General Mills access to the

unsolicited bidder's financial information and giving General Mills the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of General Mills.

73. These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

74. Finally, at the same time that the Company entered into the Merger Agreement, certain large shareholders of Blue Buffalo, entered into an agreement with General Mills pursuant to which such individuals and entities have agreed, among other things, to vote their shares of common stock of the Company in favor of the approval of the Merger Agreement at a meeting of the Company's stockholders to be held for the purpose of approving the Merger Agreement. Collectively, the signatories of the Voting and Support Agreement own approximately 51.8% of all Blue Buffalo outstanding shares, thus ensuring that the Proposed Transaction will be pushed through. Significantly, the Merger agreement does not contain any "majority of the minority provision" in order to protect Plaintiff and other public stockholders. As such, no vote of the stockholders of the Company will even take place.

75. Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

76. The sales process as indicated in the Preliminary Information Statement leading up to the Proposed Transaction shows serious flaws in the supposed unbiased nature of the decision to enter into the Proposed Transaction.

77. In addition to the clearly flawed objective nature of the Board members who ran and voted on the Proposed Transaction, the breakdown of the benefits of the deal indicate that Blue Buffalo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they

will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Blue Buffalo.

78.   Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant stakes in the combined corporation upon the consummation of the Proposed Transaction as follows:

| Name and Address of Beneficial Owner (1) | Number of Outstanding Shares of Company Common Stock Owned (2) | Percentage of Outstanding Shares of Company Common Stock |
|---|---|---|
| **Greater than 5% Stockholders:** | | |
| Invus, L.P. (3) | 87,460,875 | 44.7% |
| Christopher T. Bishop (4)(5)(9)(10) | 14,722,439 | 7.5% |
| The Bishop Family Limited Partnership (5) | 12,147,914 | 6.2% |
| Wellington Management Group LLP (11) | 12,981,942 | 6.6% |
| **Named Executive Officers and Directors:** | | |
| William W. Bishop, Jr. (5)(6)(9) | 14,130,149 | 7.2% |
| Michael Nathenson (7) | 489,762 | * |
| William W. Bishop | 27,318 | * |
| Raymond Debbane (8) | 10,569 | * |
| Philippe Amouyal (8) | 10,569 | * |
| Evren Bilimer (8) | 10,569 | * |
| Aflalo Guimarães (8) | 10,569 | * |
| Michael A. Eck | 14,819 | * |
| Frances Frei | 14,819 | * |
| Amy Schulman | 14,819 | * |
| All directors and executive officers as a group (10 persons) | 14,733,962 | 7.5% |

79.   Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, restricted stock unit ("RSU"), or restricted stock, whether vested or unvested, will be canceled and converted into the right to the merger consideration.  As detailed below, certain of the Individual Defendants and Company insiders own hundreds of thousands of Company options for which they will receive consideration

80.   Based on equity compensation holdings as of March 15, 2018, the number of vested and unvested Options held by the executive officers are as follows: William Bishop, Jr., 119,819.00 (unvested); Mike Nathenson, 489,762.00 (vested), 69,525.00 (unvested).

81.    Based on equity compensation holdings as of March 15, 2018, the number of unvested RSUs held by the executive officers are as follows: William Bishop, Jr., 17,998.00; Mike Nathenson, 10,461.00. None of the RSUs granted to the executive officers have vested.

82.    Based on equity compensation holdings as of March 15, 2018, the number of fully vested shares of Restricted Stock held by our non-employee directors (as a group) are 114,051.00.

83.    Moreover, certain employment agreements with Blue Buffalo executives, including certain directors, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Blue Buffalo's common stockholders. Specifically, they will grant large cash payouts as follows:

| Name | Cash(1) ($) | Equity(2) ($) | Perquisites/ Benefits(3) ($) | Total ($) |
|------|-------------|---------------|------------------------------|-----------|
| Billy Bishop | 2,000,000 | 3,470,293 | N/A | 5,460,293 |
| Michael Nathenson | 0 | 1,507,313 | 29,439 | 1,536,752 |

84.    Additionally, at least one known Company Board member, CEO and Individual Defendant Billy Bishop, will continue in his role with the combined entity.  Such employment carries with it significant compensation, including a base salary of $650,000 and bonuses and equity awards totaling well over $2 million, not shared amongst Plaintiff or Blue Buffalo public stockholders.

85.    It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

86.    Moreover, the retention of two financial advisors by the Company in the Proposed Transaction raises serious conflict related questions, especially as the Preliminary Information Statement does not give any reasoning as to why multiple financial advisors were hired, or, more specifically, why it was necessary to hire Centerview given that J.P. Morgan was already retained by the Company to act as a financial advisor.

87.    The hiring of two financial advisors when one would have sufficed, and/or the Preliminary Information Statement's lack of clarity on the issue, is especially important when considering that both financial firms will be paid $22 million each (for a total of $44 million).  The

lack of clarity as to why the Board felt it necessary to double this cost is just another indicator of the lack of proper process leading up to the Proposed Transaction.

88.     Thus, while the Proposed Transaction is not in the best interests of Blue Buffalo stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Information Statement***

89.     On March 19, 2018, Blue Buffalo filed with the SEC a materially misleading and incomplete Preliminary Information Statement that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction, and therefore is unable to be relied upon by Plaintiff and other Blue Buffalo shareholders to determine whether they should seek appraisal for their Blue Buffalo stock.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

90.     Specifically, the Preliminary Information Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Information Statement fails to disclose:

a. The Preliminary Information Statement fails to disclose the basis for the Board not establishing a special committee of the Board, consisting of independent Board members, was created to run the sales process;

b. The Preliminary Information Statement fails to disclose the basis for the Board allowing the sales process to be run by Billy Bishop and/or agents of the Bishop Family and Invus, who together control the Company;

c. The Preliminary Information Statement fails to why no market check was carried out at any point during the sales process;

d. The Preliminary Information Statement fails to disclose whether any third parties was ever contacted by the Company or by anyone on the Company's

behalf to inquire about potential interest in a strategic transaction, or if any such
third party or their agents contacted the Company about any such transaction;

e.   The Preliminary Information Statement fails to disclose why the Board allowed
employment matters related to Billy Bishop to be addressed before the Merger
Agreement was finalized;

f.   The Preliminary Information Statement fails to disclose the specific reasoning
for the Board's decision to hire to financial advisors rather than one;

g.   The Preliminary Information Statement fails to disclose the specific criteria that
would cause the standstill provisions contained in the non-disclosure agreement
between General Mills and Blue Buffalo to fall away; and

h.   The Preliminary Information Statement fails to disclose the basis for the
Company agreeing to the onerous terms of the Non-Solicitation provision in the
merger agreement.

*Omissions and/or Material Misrepresentations Concerning Blue Buffalo's Financial
Projections*

91.     The Preliminary Information Statement fails to provide material information
concerning financial projections provided by Blue Buffalo's management and relied upon by J.P.
Morgan and Centerview in their analyses.   The Preliminary Information Statement discloses
management-prepared financial projections for the Company that are materially misleading.   The
Preliminary Information Statement indicates that the financial projections were provided to J.P.
Morgan and Centerview for use in connection with performing their respective financial analyses.
Accordingly, the Preliminary Information Statement should have, but fails to provide, certain
information in the projections that Blue Buffalo's management provided to the Board and J.P.
Morgan and Centerview.   Courts have uniformly stated that "projections … are probably among
the most highly-prized disclosures by investors.   Investors can come up with their own estimates
of discount rates or [] market multiples.   What they cannot hope to do is replicate management's
inside view of the company's prospects."   *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d
171, 201-203 (Del. Ch. 2007).

92.     The Preliminary Information Statement fails to provide material information concerning the financial projections prepared by Blue Buffalo management.  Specifically, the Preliminary Information Statement fails to disclose the material line items for the following metrics:

     a.  Net Revenue;

     b.  Adjusted Operating Income;

     c.  Net interest expense;

     d.  Income before taxes;

     e.  Adjusted Net Income;

     f.  Adjusted EBITDA;

     g.  Depreciation and Amortization

     h.  Stock-based compensation

     i.  Capital Expenditures

93.     Additionally, the Preliminary Information Statement provides several non-Generally Accepted Accounting Principles ("GAAP") financial metrics, adjusted operating income, adjusted net income, adjusted EBITDA, and unlevered free cash flows, but fails disclose a reconciliation of all non-GAAP to GAAP metrics.

94.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.  And, without all material information, Blue Buffalo stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and their appraisal rights, and face irreparable harm, warranting the injunctive relief sought herein.

95.     Without accurate projection data presented in the Preliminary Information Statement, Plaintiff and other stockholders of Blue Buffalo are unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan or Centerview's financial analyses, or make

an informed decision whether to seek appraisal of their shares in lieu of the consideration offered under the terms of the Proposed Transaction.

96.     In addition, the Individual Defendants knew or recklessly disregarded that the Preliminary Information Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above depriving the stockholders of an informed decision regarding whether to seek appraisal.

97.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and as part of a common plan or scheme, and in breach of their fiduciary duties to Plaintiff, unfairly deprived Plaintiff of his ability to make intelligent and informed decisions about whether seek appraisal, and deceived Plaintiff.

98.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that she and the Company's other stockholders will continue to suffer absent judicial intervention.

99.     Without accurate projection data presented in the Preliminary Information Statement, Plaintiff and other shareholders of Blue Buffalo are unable to properly evaluate the Company's true worth, the accuracy of J.P. Morgan and Centerview's financial analyses, or make an informed decision whether to seek appraisal for their Company stock in lieu of the consideration offered in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by J.P. Morgan*

100.     In the Preliminary Information Statement, J.P. Morgan describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

101.     With respect to the *Public Trading Multiples Analysis*, the Preliminary Information Statement fails to disclose the following:

    a. The specific multiples used to calculate the FV/Adjusted EBITDA value for each company analyzed;

    b. The objective selection criteria for each of the selected companies, including the reason for including only one comparable company that operates in the same industry as Blue Buffalo, while the remaining five operate in disparate industries such as clothing and apparel; and

    c. Whether J.P. Morgan performed any type of benchmarking analysis in relation to the companies analyzed.

102.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Information Statement fails to disclose the following:

    a. The specific inputs and assumptions used to calculate the perpetuity growth rate of 2.5% to 3.5% applied to the unlevered free cash flow of the Company during Calendar year 2022;

    b. The specific inputs and assumptions used to calculate the discount rate range of 8.25% to 9.25%;

    c. The quantity and source of the WACC assumptions and value of the weighted average cost of capital used in the analysis;

    d. The value of the unlevered free cash flows used in the analysis; and

    e. How J.P. Morgan treated stock-based compensation expense in its analysis.

103.    With respect to the *Selected Transactions Analysis*, the Preliminary Information Statement fails to disclose the following:

    a. The specific multiples used to calculate the FV/Adjusted EBITDA value for each compared transaction;

    b. The date on which each selected transaction closed;

    c. The value of each selected transaction; and

    d. Whether J.P. Morgan performed any type of benchmarking analysis in relation to the transactions analyzed

104.    These disclosures are critical for stockholders to be able to make an informed decision on whether to seek appraisal of their shares in lieu of the consideration offered under the terms of the Proposed Transaction.

105.    Without the omitted information identified above, Blue Buffalo's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Blue Buffalo's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests, and therefore cannot make an informed decision as to whether to seek appraisal for their shares of Blue Buffalo stock in lieu of the consideration offered in the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

106.    In the Preliminary Information Statement, Centerview describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

107.    With respect to the *Selected Public Company Analysis*, the Preliminary Information Statement fails to disclose the following:

a.   The specific multiples used to calculate the Enterprise Value/2018E Adjusted EBITDA of each selected company;

b.   The objective selection criteria for each of the selected companies, including the reason for including only one comparable company that operates in the same industry as Blue Buffalo; and

c.   Whether Centerview performed any type of benchmarking analysis in relation to the companies analyzed.

108. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Information Statement fails to disclose the following:

    a. The specific inputs and assumptions used to calculate the perpetuity growth rates range of 2.5% to 3.5% to the Company's fully taxed unlevered free cash flows for the terminal year;

    b. The specific inputs and assumptions used to calculate the discount rate range of 8.5% to 9.5%;

    c. The quantity and source of the WACC assumptions and value of the weighted average cost of capital used in the analysis; and

    d. The value of the unlevered free cash flows used in the analysis.

109. With respect to the *Selected Transactions Analysis*, the Preliminary Information Statement fails to disclose the following:

    a. The specific multiples used to calculate the Enterprise Value/Adjusted EBITDA value for each compared transaction;

    b. The date on which each selected transaction closed;

    c. The value of each selected transaction;

    d. Whether Centerview performed any type of benchmarking analysis in relation to the transactions analyzed.

110. These disclosures are critical for stockholders to be able to make an informed decision on whether to seek appraisal of their shares in lieu of the consideration offered under the terms of the Proposed Transaction.

111. Without the omitted information identified above, Blue Buffalo's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests. Moreover, without the key financial information and related disclosures, Blue Buffalo's public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests, and therefore cannot make an informed decision as to whether to seek

appraisal for their shares of Blue Buffalo stock in lieu of the consideration offered in the Proposed Transaction.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

112.    Plaintiff repeats all previous allegations as if set forth in full herein.

113.    The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff and the Company's public stockholders.

114.    By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Blue Buffalo.

115.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Blue Buffalo by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Blue Buffalo to its public stockholders.

116.    Indeed, Defendants have accepted an offer to sell Blue Buffalo at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

117.    Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision as to whether to seek appraisal for their shares of Blue Buffalo stock in lieu of the consideration offered in the Proposed Transaction.

118.    The Individual Defendants dominate and control the business and corporate affairs of Blue Buffalo, and are in possession of private corporate information concerning Blue Buffalo's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public stockholders of Blue Buffalo which makes it

inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

119.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

120.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Blue Buffalo's assets and have been and will be prevented from obtaining a fair price for their common stock.

121.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

122.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

**SECOND COUNT**

**Violations of Section 14(a) of the Exchange Act**

**<u>(Against All Defendants)</u>**

123.    Plaintiff repeats all previous allegations as if set forth in full herein.

124.    Defendants have disseminated the Preliminary Information Statement with the intention of soliciting stockholders in favor of the Proposed Transaction.

125.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to

solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

126.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

127.    The Preliminary Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

128.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

129.    The Individual Defendants were at least negligent in filing the Preliminary Information Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Information Statement not misleading.

130.    The misrepresentations and omissions in the Preliminary Information Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to seek appraisal of their shares in lieu of the consideration offered under the terms of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the consummation of the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

131.    Plaintiff repeats all previous allegations as if set forth in full herein.

132.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Information Statement was materially misleading to Company stockholders.

133.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Information Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

134.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Blue Buffalo's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being

concealed from the Company's stockholders and that the Preliminary Information Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

135. The Individual Defendants acted as controlling persons of Blue Buffalo within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Blue Buffalo to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Blue Buffalo and all of its employees. As alleged above, Blue Buffalo is a primary violator of Section 14 of the Exchange Act and SEC Rule Preliminary Information Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.      Enjoining the Proposed Transaction;

C.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Blue Buffalo and obtain a transaction which is in the best interests of Blue Buffalo and its stockholders;

F.      Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 29, 2018                        Respectfully submitted,

                                                      **LAW OFFICE OF NICOLE A. VENO, LLC**

                                    By:      /s/ Nicole A. Veno
                                                      Nicole A. Veno (ct29373)
                                                      573 Hopmeadow Street
                                                      Simsbury, CT 06070
                                                      Telephone: (860) 474-4024
                                                      Facsimile: (860) 717-3207
                                                      nveno@venolaw.com

                                                      **BRODSKY & SMITH, LLC**
                                                      Evan J. Smith (*pro hac vice* forthcoming)
                                                      Marc L. Ackerman (*pro hac vice* forthcoming)
                                                      Two Bala Plaza, Ste. 510
                                                      Bala Cynwyd, PA 19004
                                                      Phone: (610) 667-6200
                                                      Facsimile (610) 667-9029
                                                      esmith@brodskysmith.com
                                                      mackerman@brodskysmith.com

                                                      *Attorneys for Plaintiff*